**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Kevin Hummer | : | Case No. 3:04 CV 7067 |
| Plaintiff, | : | |
| vs. | : | |
| Detective Kleman and Lima | : | **MAGISTRATE'S REPORT AND** |
| Police Department | | **RECOMMENDATION** |
| | : | |
| Defendants. | | |
| | : | |

This prisoner civil rights case, filed pursuant to 42 U. S. C. § 1983, was referred to the undersigned

Magistrate for report and recommendation.  Pending is Defendants' unopposed Motion to Dismiss and/or

for Summary Judgment (Docket No. 46).  For the reasons that follow, the Magistrate recommends that

Defendants' Motion for Summary Judgment be granted and the referral to the Magistrate terminated.

## FACTUAL BACKGROUND

At the time of his arrest on February 18, 2003, Plaintiff resided in an apartment located at 137

Haller Street, Lima, Ohio.  Defendant Lima Police Department (LPD) is organized and administered by

the City of Lima, a municipal corporation as defined in OHIO REV. CODE §715.05 (Docket No. 32, ¶3).

Defendant Phillip Kleman (Kleman) was a detective employed by Defendant LPD at the time of Plaintiff's arrest (Docket No. 32, ¶ 4).

The following facts are not in dispute.  On February 18, 2003, Defendant LPD's PACE/SWAT team executed a search warrant at Plaintiff's residence.  While Plaintiff was face down on the floor, the police officers shot and killed his dog.  Plaintiff became agitated and refused to cooperate with or otherwise identify himself to the police.  Plaintiff's brother disclosed their identities and the police handcuffed Plaintiff and took him to Defendant LPD for booking (Docket No. 1).  At the police department, Plaintiff was still agitated and refused to cooperate with Defendant Kleman (Docket No. 1, p. 3).

There is, however, a dispute regarding the events subsequent to Plaintiff's booking.  Defendant Kleman and Officer Rader, a non-party in this litigation, both reported that Plaintiff was in a holding room when a female co-defendant was brought into the room.  Plaintiff apparently shouted obscenities and refused to cooperate, so the officers moved him to the "drunk tank," which was located on a different floor of the LPD (Docket No. 46).  Defendant Kleman stated that he entered the holding room and explained that he would have to handcuff Plaintiff to transport him to the "drunk tank."  Defendant Kleman claims that Plaintiff resisted his attempts to place him in handcuffs.  Specifically, Plaintiff jerked away in a forward manner while Defendant Kleman attempted to cuff him.  During the scuffle, Plaintiff scratched Defendant Kleman's middle index finger and twisted his thumb.  In an attempt to regain control of Plaintiff, Defendant Kleman stated that he used his right hand to push Plaintiff's head down and used his left hand to restrain Plaintiff as he escorted him down the stairs.

After entering the drunk tank, Defendant Kleman placed Hummer down against the concrete bed portion of the drunk tank.  Officer Rader entered the drunk tank and raised Plaintiff's feet and turned him

2

so that he was lying face down on the concrete bed.  Officer Rader removed the handcuffs and both officers left the area.  Within four to five minutes later, Defendant Klemen, Officer Rader and two Med-Corp employees returned to the drunk tank to examine Plaintiff, finding a small abrasion or contusion to the lower right eye.  Plaintiff continued to be belligerent.  Plaintiff was transported to St. Rita's and received two stitches to the eye.  Plaintiff reported a small amount of blood located on the concrete bed where he was laying while being uncuffed.  Neither Defendant Kleman nor Rader had blood on them (Docket No. 46, Kleman Report of 2/26/03).

Defendant Kleman's statement is consistent with Officer Rader's report of events.  Officer Rader confirmed that Plaintiff was in an extremely agitated state and began twisting about and refusing to cooperate during the handcuffing.  He allegedly was belligerent and generally bad mouthing the officers and the LPD.  While walking down the hallway to the drunk tank, Officer Rader reported that Defendant Kleman used a "mild choke hold" to control Plaintiff en route to the drunk tank.  Once in the drunk tank, Plaintiff dropped to his knees and refused to cooperate further.  Officer Rader gave a similar explanation as Defendant Klemen regarding placing Plaintiff on the concrete bench and uncuffing  him.  After the officers left the drunk tank, Plaintiff complained of bleeding from his forehead and Officer Rader advised that medical personnel would be contacted to look at the injury.  When at St. Rita's for treatment, Plaintiff remained in an agitated state.  One stitch, with several loops, was used to repair the laceration.  At Plaintiff's request, pictures were taken of his face.  Plaintiff was returned to LPD (Docket No. 46, Radar Report of 2/26/03).  The LPD resistance Form described Plaintiff's injury as a 3/8 inch cut to the side of right eye. (Docket No. 46)

Plaintiff did not file an opposition; however, his version of events is set forth in an unsworn affidavit

3

attached to his Complaint.  He claims the following occurred at the LPD after he was fingerprinted.

Defendant Kleman started asking him questions while he was still handcuffed.  Plaintiff was angry about

the shooting of his dog and uttered obscenities to Defendant Kleman who became very upset and grabbed

Plaintiff by the throat and grabbed his pony tail to lift him out of the chair.  Plaintiff then stated that he was

handcuffed, picked up from behind, taken down two flights of stairs, and placed in a large room.  Plaintiff

contends that he lapsed in and out of consciousness while the officers escorted him downstairs.

After entering the drunk tank, the officers placed him on his stomach on the concrete bench where

"Detective Kleman, who was still maintaining his choke hold . . . , pulled my head back and bounced it .

. . on the stoop."  Plaintiff was "dazed" and noticed a pool of blood on the concrete bench once the officers

left the "drunk tank."  Plaintiff requested help and several officers entered the "drunk tank" and examined

his injury.  Plaintiff reported that he received thirteen stitches above  his right eyebrow and they were

removed about a week later.   About a month later, Plaintiff underwent a CAT scan at Lima Memorial

Hospital (Docket No. 1).  Plaintiff's CAT scan showed no evidence of intra-cranial hemorrhaging or skull

fracture (Docket No. 38, Ex. B).

Plaintiff pled guilty to two counts of trafficking in crack cocaine.  Two counts of drug trafficking and

one count of possession of marijuana were dismissed.  Plaintiff was sentenced to consecutive terms of

eleven months for each of the two counts (Docket Nos. 1 and 46).

## PROCEDURAL HISTORY

Plaintiff filed his Complaint against Defendants Kleman and LPD on February 13, 2004 and filed

on March 26, 2004 a Motion to Amend his Complaint, which was granted.  Defendants answered the

Complaint on July 21, 2004 and filed an Answer to the Amended Complaint on September 30, 2004.

4

Both parties submitted supporting documents in addition to their pleadings and Defendants submitted the affidavit of Major Richard L. Shade, who maintains custodial oversight of LPD records.  On April 26, 2005, Defendants filed a Motion to Dismiss and/or for Summary Judgment.  Plaintiff was served by certified mail.  Plaintiff has failed to respond to Defendants' Motion to Dismiss and/or for Summary Judgment.

## MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW

Plaintiff and Defendants submitted substantial extrinsic material to the district court to supplement their arguments.  The parties each had sufficient notice[1] that the Court could consider the outside material when ruling on the issues presented; consequently, the pleadings in this case are construed as a Motion for Summary Judgment under FED. R. CIV. P. 56(b).

A motion will be treated as one for summary judgment and disposed of as provided in Rule 56 if such motion asserting the failure of the pleading to state a claim upon which relief can be granted is accompanied by matters outside the pleading presented to and not excluded by the court. *Shelby County Health Care Corporation v. Southern Council of Industry Workers Health and Welfare Trust Fund,* 203 F.3d 926, 931 (6th 2000).  All parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. FED. R. CIV. P. 12(b); *Id.* (*citing Employers Insurance of Wausau v. Petroleum Specialties,* 69 F.3d 98, 105 (6th Cir.1995)). The decision to convert the motion to dismiss and consider matters outside the pleading is within the discretion of the trial court. *Id.*

---

[1]

An attempt to provide notice to Plaintiff via telephone was made on May 20, 2005.  Because the telephone number was no longer in service, a letter providing notice was mailed via certified mail on May 24, 2005.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (*citing LaPointe v UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993)). The moving party bears the initial burden of establishing an absence of evidence to support the non-moving party's case.  *Celotex Corporation v. Catrett*, 106 S. Ct. 2548, 2552-2553 (1986).  The mere existence of a scintilla of evidence to support Plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the Plaintiff.  *Id.* at 2512.

In the face of the moving party's properly supported motion, the non-movant cannot rest on his or her allegations to get to the jury without significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Incorporated*, 106 S. Ct. 2505, 2510 (1986) (*citing First National Bank of Arizona v. Cities Services Co.*, 88 S. Ct. 1575, 1593 (1968)).  The non-movant must do more than simply show that there is some metaphysical doubt as to the material facts.  *Matsushita Electric Industry v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1355 (1986).  The opponent's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. *Id.*

In determining if the facts are material, the court must look to the substantive law.  The evidence of the non-movant is then taken as true and all justiciable inferences are drawn in his or her favor. *Anderson*, 106 S. Ct. at 2513 (*citing Addickes v. S.H. Kress & Co.*, 90 S. Ct. 1598, 1609-1610 (1970)).  The Court must refrain from resolving conflicts in the evidence or making credibility determinations.  *Id*.  If, after deciding, the dispute about a material fact is genuine, summary judgment

6

should be denied.

## DISCUSSION

*Qualified Immunity*

This case arises out of Plaintiff's contacts with Defendant LPD officers during the execution of a search warrant at his resident and his subsequent arrest and detention. During the encounter at his residence, unidentified officers fatally shot Plaintiff's dog. Plaintiff filed this action pursuant to 42 U. S. C. § 1983 alleging a claim against Defendant Kleman for excessive force and against Defendant LPD for failure to train Defendant Kleman. Specifically, Plaintiff argues that Defendant Kleman violated the Eighth Amendment by using deliberate and excessive force during his seizure and detention. Defendant Kleman asserts the affirmative defense of qualified immunity.

In civil suits pursuant to 42 U.S.C. § 1983 for money damages, qualified immunity protects a public official from being sued as long as the official "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crockett v. Cumberland College*, 316 F.3d 571, 579 (6th Cir. 2003) (*citing Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738 (1982)). Qualified immunity is not a defense to liability; where it is applicable, its purpose is to shield the official from suit altogether, saving the official from the burdens of discovery and costs of trial. *Id.* (*citing Mitchell v. Forsyth*, 105 S. Ct. 2806, 2815 (1985)).

A two-part analysis is employed for assessing whether a public official is entitled to qualified immunity. *Id.* (*citing Saucier v. Katz*, 121 S. Ct. 2151, 2155-2156 (2001); *Charvat v. East Ohio Regional Wastewater Authority*, 246 F.3d 607, 616 (6th Cir.2001)). First, an inquiry is made as to whether the facts alleged, when viewed in the light most favorable to the party asserting the injury, show

7

that the public official's conduct violated a constitutional right. *Id*. Second, if the denial of a constitutional right is demonstrated, we must assess whether that right was clearly established at the time of the alleged violation. *Id*. The second inquiry requires a determination that the right was so clearly established that a reasonable official would understand that the particular conduct at issue violated that right. *Id*. (*citing Anderson*, 107 S. Ct. at 3039).

The defendant bears the initial burden of coming forward with facts to show that he or she acted within the scope of his or her discretionary authority during the incident in question. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). The burden then shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. *Id*. The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Id*. (*citing Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir.1991)).

The central question in this case is whether a favorable view of Plaintiff's alleged facts show that Defendant Kleman violated a clearly established constitutional right to freedom from excessive force by law enforcement officers.

The Supreme Court has determined that all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under the Eighth Amendment. *Graham v. Connor*, 109 S. Ct. 1865, 1871 (1989). Accordingly, Plaintiff's excessive force claim is considered under the Fourth Amendment.

There is no generic standard to be applied to any accusation of a Fourth Amendment excessive

8

force violation brought by a plaintiff pursuant to 42 U. S. C. § 1983.  *Id*. at 1869-1870.  Instead, each allegation must be analyzed individually and considered in light of the circumstances surrounding the arrest. *Id.*  Each "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."  *Id.* at 1870.  Factors that should be considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* at 1872.

To demonstrate that an officer reasonably violated a clearly established right, the plaintiff must show the prior articulation of a prohibition against the type of excess force exerted in his or her case.  "In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Champion v. Outlook Nashville*, 380 F.3d 893, 903 (6th Cir. 2004) *cert. denied*, 125 S. Ct. 1837 (2005) (*citing Higgason v. Stephens,* 288 F.3d 868, 876 (6th Cir. 2002).  "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs."  *Id.* (*citing Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).  .

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Martin v. Heideman,* 106 F. 3d 1308, 1313 (6th Cir. 1997). The Fourth Amendment clearly prohibits unduly tight handcuffing in the course of an arrest.  *Id.* (6th Cir. 1997) (*cf. Burchett v. Kiefer,* 310 F. 3d 937, 944-945 (6th Cir. 2002) (an excessive force claim was rejected where officers left defendant tightly handcuffed for three hours because defendant failed to complain initially).  The Sixth Circuit has determined that there is simply no governmental interest in continuing to beat an arrestee after he has been neutralized.  *Phelps v. Coy*, 286 F. 3d 295, 301 (6th Cir.

9

2002). A gratuitous blow with a policeman's nightstick may cross the constitutional line. *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988). Putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force. *Champion*, 380 F. 3d at 903 (*See also Lyons v. City of Xenia*,--F. 3d-- 2005 WL 1846994 (6th Cir. 2005) (officer entitled to qualified immunity regarding arrestee's excessive force handcuffing and tackling claim)).

Defendant Kleman filed an incident report describing a minor injury to his finger and thumb and a concern that Plaintiff would bite him. Plaintiff concedes that he was uncooperative and resisting the officer's efforts to apply handcuffs for the transfer to another holding area and resisted officers attempts to remove the cuffs upon his arrival at the drunk tank. The parties agree that Defendant Kleman used a choke hold to detain Plaintiff (Docket No. 46). Defendant Kleman asserts that the hold was necessary in order to maintain control of a resistant arrestee who was being moved to a different location. Plaintiff admits that he was being uncooperative in the transfer. However, Defendant Kleman did not offer evidence that Plaintiff posed an immediate threat of danger. Yet Defendant Kleman pushed Plaintiff's head against the concrete bench causing a laceration that required stitches.

It is clear from the Sixth Circuit's analysis in various decisions and considering the *Graham* factors and a favorable view of Plaintiff's allegations, that Defendant Kleman violated Plaintiff's Fourth Amendment right to be free from excessive force. After finding that a constitutional right was violated, the analysis must be undertaken as to whether the right was a clearly established right of which a reasonable person would have known.

For a right to be clearly established "[t]he contours of the right must be sufficiently clear that a

10

reasonable official would understand that what he is doing violates that right." *Burchett v. Kiefer,* 310 F. 3d at 942.  "Although it need not be the case that 'the very action in question has been previously held unlawful, ... in the light of pre-existing law, the unlawfulness must be apparent.' " *Id.* (*quoting Anderson*, 107 S. Ct. at 3039).  An action's unlawfulness can be apparent from direct holdings, specific examples described as prohibited, or from the general reasoning that a court employs.  *Hope v. Pelzer*, 122 S. Ct. 2508, 2516-17 (2002).

The Sixth Circuit has held that the right to be free from excessive force is a clearly established Fourth Amendment right.  *Walton v. City of Southfield,* 995 F. 2d 1331, 1342 (6th Cir. 1993).  Plaintiff's claim therefore turns on whether a reasonable person would have known that the conduct exhibited while trying to subdue him was violative of his Fourth Amendment right.

Neither the Sixth Circuit nor the Supreme Court proscribes the use of reasonable force in detaining an arrestee; however, the contours of the use of such force is not sufficiently clear.  Plaintiff has failed to proffer evidence that the use of force under the circumstances of this case is clearly defined or that it was unlawful in this situation.  Accordingly, the Magistrate cannot find that Defendant Kleman's conduct violated clearly established law.

Finally, Plaintiff has the ultimate burden of proof to show that the defendant is not entitled to qualified immunity.  Plaintiff has failed to satisfy that burden.  In the absence of evidence or affidavits by Plaintiff to rebut Defendant's factual presentation, the Magistrate concludes that the level of force used by Defendant Kleman to maintain control of a belligerent and resistant arrestee

was reasonable under the circumstances presented.

The Magistrate concludes that there is no evidence that the officer's use of force was objectively

unreasonable; accordingly, Defendant Kleman is entitled to qualified immunity.

*Defendant LPD's Liability*

The Magistrate next considers whether the Defendant LPD is responsible for Defendant Kleman's alleged violation of Plaintiff's Fourth Amendment rights. There is no basis to impose liability against the city or its police department under 42 U.S.C. § 1983. *Turner v. City of Taylor*, — F. 3d — ; 2005 WL 1398522, *7 (6th Cir. 2005). "Despite being 'persons' for the purposes of § 1983, municipalities are not 'liable for every misdeed of their employees and agents.'" *Id.* (*citing Alkire v. Irving*, 330 F.3d 802, 814-15 (6th Cir.2003) (*quoting Garner v. Memphis Police Department*, 8 F.3d 358, 363 (6th Cir. 1993) *cert. denied*, 114 S. Ct. 1219 (1994)). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* (*citing Monell v. Department of Social Services of City of New York*, 98 S. Ct. 2018, 2037 (1978)). Thus, for Plaintiff to hold Defendant LPD liable, "he must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Id.* (*citing Alkire,* 330 F.3d at 815; *Garner,* 8 F.3d at 364).

Plaintiff has failed to identify a municipal policy demonstrating that Defendant had a custom of affirmatively condoning the use of excessive force. Plaintiff, therefore, cannot show that his alleged injury was incurred due to the implementation of a LPD policy/custom. Accordingly, the Magistrate recommends that the claims against Defendant LPD be dismissed.

*Improper Training*

Plaintiff claims that Defendants' improper training resulted in the shooting death of his beloved dog and improper management of his detention in the "drunk tank."

When damage is inflicted by municipal employees, such as police officers, the city can be held liable for failing to train its employees adequately. *Sova v. City of Mount Pleasant,* 142 F. 3d 898, 904 (6th Cir. 1998). A Plaintiff can establish liability "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *Id.* (*citing City of Canton, Ohio v. Harris*, 109 S. Ct. 1197, 1205 (1989)). Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training. *Id.* (*citing Canton*, 109 S. Ct. at 1205-06).

Even taking as true Plaintiff's allegations and drawing all justiciable inferences in his favor, Plaintiff has failed to present sufficient evidence to show that a genuine issue of material fact exists. The crux of Plaintiff's argument is that the death of his pet could have been avoided if Defendant LPD has provided "better" training for its employees. Plaintiff has failed, however, to present any probative evidence that Defendant LPD failed to train its officers, that the alleged failure to train is the result of deliberate indifference or that such failure to train or inadequate training was the cause of his dog's death.

For the foregoing reasons, the Magistrate finds that Defendant Kleman is entitled to qualified immunity on Plaintiff's excessive force claim and that the claims against Defendant LPD are without merit and should be dismissed. Accordingly, the Magistrate recommends that Defendants' Motion for Summary Judgment be granted and the referral to the Magistrate terminated.

/s/ Vernelis K. Armstrong
Vernelis K. Armstrong

13

United States Magistrate Judge

## Notice

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto has been filed.

Please be advised that, pursuant to Rule 72.3(b) of the Local Rules for this district, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.

14